UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

─────────────────────────────────

NINA SINGH RADCLIFF,                    Civil Action No. 20-3669

         Plaintiff,

                                        **OPINION**

    v.

KRISTEN RADCLIFF, et al.,

         Defendants.

─────────────────────────────────

<u>**APPEARANCES**</u>:

THOMAS SCOTT HARTY
WILLIAMS LOPATTO & HARTY PLLC
89 N. HADDON AVENUE
SUITE D
HADDONFILED, NJ 08033
    *Counsel for Plaintiff*

ALAN C. MILSTEIN
JEFFREY P. RESNICK
SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLOSKY, PC
EAST GATE CORPORATE CENTER
308 HARPER DRIVE
SUITE 200
MORRESTOWN, NJ 08057

    *Counsel for Defendant Kristen Radcliff*

JOHN L. SLIMM
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN, PC
15000 MIDLANTIC DR.
SUITE 200
P.O. BOX 5429
MOUNT LAUREL, NJ 08054

    *Counsel for Defendants Cooper Levenson, P.A.*
    *and Richard C. Klein*

1

**HILLMAN**, District Judge

Plaintiff has brought suit against Defendants Kristen Radcliff ("Defendant Radcliff"), Cooper Levenson, P.A. ("Defendant Cooper Levenson"), Richard C. Klein ("Defendant Klein") (collectively the "Defendants"), alleging that, among other things, Defendants violated the Computer Fraud and Abuse Act ("CFAA") by Defendant Radcliff installing a keylogger on Plaintiff's personal computer with full knowledge of his lawyers, Defendants Klein and Cooper Levenson. This matter comes before this Court on Defendant Radcliff's motion to dismiss and Defendants Klein and Cooper Levenson's motion to dismiss. (ECF Nos. 6 and 7). For the reasons stated below, the Court will grant Defendant Radcliff's motion to dismiss and Defendants Klein and Cooper Levenson's motion to dismiss with respect to the CFAA claim. The Court will decline to exercise supplemental jurisdiction over the remaining state law claims.

**BACKGROUND**

The Court takes its brief recitation of the facts from Plaintiff's Complaint. (ECF No. 1 "Compl."). Plaintiff and Defendant Radcliff were previously married and in 2014, Defendant Radcliff initiated a divorce action in the Superior Court of New Jersey (the "Divorce Action"). (Compl. ¶2). Shortly before separating in July 2013, Defendant Radcliff installed a keylogger on Plaintiff's computer. (Compl. ¶¶5,

2

46).  A keylogger is "installed without the user's consent to harvest confidential information and credentials related to bank accounts, email, web-history, primarily for committing fraud." (Compl. ¶6).  Information, such as Plaintiff's passwords, emails, attorney/client communication, and work product information, were then forwarded to Defendant Radcliff.  (Compl. ¶9).  Defendant Radcliff had access to "virtually everything the Plaintiff did online for three years." (Compl. ¶11).  Plaintiff explains she never consented to Defendant Radcliff's installation of the keylogger and that it was not until she received a report issued by Lt. Hendrickson (the "Hendrickson Report") in May 2019 when "she learn[ed] of the nature and extent of the malware installed on her computer." (Compl. ¶10). Plaintiff alleges Defendant Radcliff installed the keylogger with the full knowledge of Defendants Klein and Cooper Levenson. (Compl. ¶13).  Plaintiff further alleges that during the Divorce Action, documents were produced that were purportedly generated by the Plaintiff.  (Compl. ¶15).  Defendants Klein and Cooper Levenson never disclosed the existence of the keylogger nor explained they had access to Plaintiff's attorney-client communication and work product.  (Compl. ¶21).

Defendants Klein and Cooper Levenson filed their joint motion to dismiss on May 18, 2020.  (ECF No. 6).  Defendant Radcliff filed his motion to dismiss on May 28, 2020.  (ECF No.

7).  The motions to dismiss have been fully briefed.  Therefore, the motions are ripe for adjudication.

## DISCUSSION

### A.   Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this case because it presents a federal question under the CFAA.  See 28 U.S.C. § 1331.

### B.   Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In considering a motion under Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the pleader.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Philips v. Cty. Of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . . . required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff).  A pleading is sufficient if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

When weighing a motion to dismiss, the Court does not ask

4

"whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions.'") (citations omitted).

In applying the Twombly/Iqbal standard, a district court will first "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusion." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 678). Next, the Court will "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (citing Iqbal, 556 U.S. at 679).

To meet this standard, a "complaint must do more than allege the plaintiff's entitlement to relief." Id.; see also Philips, 515 F.3d at 234 ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of'

5

the necessary element.") (citing Twombly, 550 U.S at 556).  The

party moving to dismiss under 12(b)(6) "bears the burden of

showing that no claim has been presented."  Hedges v. United

States, 404 F.3d 744, 750 (3d Cir. 2005).

### C.   Whether Defendant Radcliff Waived his Right to File a Motion to Dismiss

Plaintiff first argues Defendant Radcliff's motion to

dismiss is improper because he "expressly waived his right to

file a Rule 12(b)(6) motion." (ECF No. 12-1 at 9).  In support

of this argument, Plaintiff points to the Order of dismissal

filed on February 19, 2020 ("Dismissal Order"). (ECF No. 12-6

at 14).  The Dismissal Order states that Defendant Radcliff

"intends to file an Answer to the Federal action and assert

various counterclaims." (ECF No. 12-6 at 14).  Defendant

Radcliff counters that the Dismissal Order did not even

reference a 12(b)(6) motion, did not provide that Defendant

Radcliff waived any right to file a 12(b)(6) motion, nor

explained that Plaintiff would be shielded from a motion to

dismiss.  (ECF No. 15 at 4).

"Because a consent order 'embodies the agreement of the

parties,' we construe the consent essentially as we would a

contract."  Samost v. Samost, 641 Fed. Appx. 123, 126 (3d Cir.

Nov. 13, 2015) (citations omitted); see also United States v.

ITT Cont'l Baking Co., 420 U.S. 223, 236-37 (1975) ("[S]ince

consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts . . . .").  Thus, general principles of contract interpretation apply to the question of whether Defendant Radcliff waived his right to file a motion to dismiss.

Courts must "[i]nterpret a contract according to its plain language by reading the document as a whole in a fair and common sense manner so as to match the reasonable expectations of the parties."  Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc., 653 F.3d 225, 231 (3d Cir. 2011) (citing Hardy ex rel. Dowdell v. Abdul-Matin, 965 A.2d 1165, 1168-69 (N.J. 2009) ("A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner."). The Dismissal Order between Plaintiff and Defendant Radcliff fails to state Defendant Radcliff agreed to waive his right to file a Motion to Dismiss under the Federal Rules of Civil Procedure.  Here, reading the Dismissal Order in a "fair and common sense manner" leads to the conclusion that Defendant Radcliff did not waive his right to file a motion to dismiss as the Dismissal Order fails to explain Defendant Radcliff is waiving his right to file a motion to dismiss.  Plaintiff's focus on the language that Defendant Radcliff intended to file an Answer is not sufficient to suggest Defendant Radcliff was knowingly waiving his right to file a motion to dismiss.

7

Under New Jersey law, "[w]aiver is the voluntary and intentional relinquishment of a known right." Knorr v. Smeal, 178 N.J. 169, 177 (2003). "An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." Id. "The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." Id. "The party waiving a known right must do so clearly, unequivocally, and decisively." Id. "[I]t must be shown that the party charged with waiver knew of his or her legal rights and deliberately intended to relinquish them." Barclays Bank PLC v. 865 Centennial Ave. Assocs. Ltd. Pshp., 26 F. Supp. 2d 712, 719 (D.N.J. June 23, 1998). "The burden of proving waiver is upon the party asserting it." Cacon, Inc. v. Rand Envtl. Servs., No. 2480-04, 2006 WL 2389553, at *3 (N.J. Super. App. Div. Aug. 21, 2006).

Here, Plaintiff appears to contend that Defendant Radcliff relinquished his right to file a motion to dismiss because the Dismissal Order stated he intended to file an Answer. However, Plaintiff cites no authority to support the suggestion, and this Court was not able to find such support through its own independent research, that including the language "to file an Answer" constitutes a voluntary and intentional relinquishment of a right to file a motion to dismiss. At the very least, this

8

Court cannot find that Defendant Radcliff "deliberately intended" to relinquish his right to file a motion to dismiss. Accordingly, this Court finds that Defendant Radcliff has not waived his right to file a motion to dismiss.

   **D.   Whether the Court may Consider Plaintiff's Counterclaim in the <u>Tevis</u> Action and Hendrickson's Investigation Report**

In support of their argument that the statute of limitations bars Plaintiff's CFAA claim, Defendants direct this Court's attention to (1) Plaintiff's verified counterclaim filed on September 9, 2015 in a related <u>Tevis</u> litigation in state court (the "Counterclaim"); and (2) the Hendrickson Report attached to Plaintiff's Complaint as Exhibit C.  Plaintiff argues on a motion to dismiss this Court cannot consider the Counterclaim without converting Defendants' motions to dismiss into motions for summary judgment.  Plaintiff's argument is based on case law that explains "only a complaint which shows on its face that relief is barred by the statute of limitations is properly subject to a Rule 12(b)(6) motion."  (ECF Nos. 11-1 at 13; 12-1 at 14-15).  Although Plaintiff's citation is a correct rule of law, she ignores the additional well-established rule of law that on a motion to dismiss this Court may consider exhibits attached to a complaint and matters of public record.

"A party may raise a statute of limitations defense in a Rule 12(b)(6) motion only if the time alleged in the complaint

shows that the cause of action was not brought within the statute of limitations." Estate of Strouse v. Atl. Cty., No. 17-5662, 2019 WL 2588775, at *5 (D.N.J. June 24, 2019) (citing Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)).  "In deciding the statute of limitations defense in a motion to dismiss, courts may consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and documents integral to or explicitly relied on in the complaint." Id. (citing Schmidt, 770 F.3d at 249).

First, this Court may consider the Hendrickson Report in determining whether the statute of limitations bars Plaintiff's CFAA claim because it is an exhibit attached to Plaintiff's Complaint.  (ECF No. 1-4).

Second, this Court may take judicial notice of Plaintiff's Counterclaim because it is a matter public record.  When considering a motion to dismiss, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).  Even in Rule 12(b)(6) posture, where the Court is limited to the allegations plead on the face of the complaint, a court may consider judicially noticeable facts without converting a motion to dismiss into a motion for summary judgment.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551

U.S. 308, 323 (2007) (noting courts "ordinarily examine ...
matters of which [they] may take judicial notice" when ruling on
Rule 12(b)(6) motions to dismiss); Beverly Enters., Inc. v.
Trump, 182 F.3d 183, 190 n.3 (3d Cir. 1999) (holding that a
court may consider "matters of public record" on a motion to
dismiss without converting the motion to one for summary
judgment).

It follows that a court may take judicial notice of the
existence of another court's opinion.  See Southern Cross
Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d
410, 426 (3d Cir. 1999) (A court may take judicial notice of
another court's opinions "not for the truth of the facts recited
therein, but for the existence of the opinion, which is not
subject to reasonable dispute over its authenticity.")
(citations omitted).  "Likewise, a court may take judicial
notice of the record from a previous court proceeding between
the parties." Jonas v. Gold, No. 13-2949, 2014 WL 4854484, at *6
(D.N.J. Sept. 30, 2014) (citing Oneida Motor Freight, Inc. v.
United Jersey Bank, 848 F.2d 414, 416 n.3 (3d Cir. 1988)); see
also Holmes v. Christie, No. 16-1434, 2018 WL 6522922, at *1 n.1
(D.N.J. Dec. 12, 2018) (citing Johnson v. Pugh, No. 11-0385,
2013 WL 3013661, *2 (E.D.N.Y. June 18, 2013) ("A court may take
judicial notice of matters of public record, including
pleadings, testimony, and decisions in prior state court

11

adjudication, on a motion to pursuant to Rule 12(b)(6).");

Unitrin Auto & Home Ins. Co. v. Clayton Corp., No. 15-02079,

2016 WL 8199315, at *1 n.1 (M.D. Pa. Apr. 20, 2016)(citing

O'Boyle v. Braverman, 337 Fed. App'x 162, 164-65 (3d Cir. 2009);

Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000)) ("This

Court, however, may consider the state court case, despite being

'outside the pleadings,' without triggering the requirement of

Rule 12(d). As a public record, whose authenticity is not in

dispute, we may take judicial notice of the state court

complaint.").

    Accordingly, this Court may take judicial notice of the

Counterclaim, not for the truth of the facts recited therein,

but for the existence of the Counterclaim.  Moreover, given that

the Counterclaim filed by Plaintiff in the various state court

actions are averments that she herself prepared and submitted to

a court, the Counterclaim "can be accurately and readily

determined from sources whose accuracy cannot reasonably be

questioned." FED. R. EVID. 201(b).

    **E.**   **Whether Plaintiff's CFAA claim is Time-Barred[1]**

---

[1] The parties raise several arguments regarding why Plaintiff's
claims fail.  This Opinion does not address such arguments
because, as discussed *infra* in Sections E-F, this Court agrees
Plaintiff's only federal claim, the CFAA claim, is barred by the
statute of limitations and this Court declines to exercise
supplemental jurisdiction over Plaintiff's remaining state
claims at this early stage in litigation.  Plaintiff argues
Defendant Radcliff waived his right to move for dismissal of the

Defendants argue that Plaintiff's claim under the CFAA is time-barred.  A plaintiff bringing a civil action under the CFAA must do so within two years of (1) "the date of the act complained of" or (2) "the date of the discovery of the damage." 18 U.S.C. § 1030(g).  The CFAA distinguishes between "damage" and "loss," and consequently, if a plaintiff does not allege "damage," as defined by § 1030(e)(8), then the plaintiff is limited to bringing the action within two years of the date of the act complained of in this claim.  See Tactical Personnel Leasing, Inc. v. Hajduk, No. 18-203, 2018 WL 4740195, at *4-5 (W.D. Pa. Oct. 2, 2018); State Analysis, Inc. v. Am. Fin. Servs. Assoc., 621 F. Supp. 2d 309, 315-17 (E.D. Va. 2009) (noting that the CFAA "distinguishes between loss and damage in that the 'discovery' provision that can lengthen the statute of limitations applies only to the discovery of damage, not loss" and finding that a plaintiff's claim failed because the

_____

state claims for lack of jurisdiction because Defendant Radcliff consented to litigate all claims before this Court.  (ECF No. 12-1 at 9).  In support of this argument, as Defendant Radcliff notes, Plaintiff conflates the concept of a forum selection clause with jurisdiction.  The parties may not agree to litigate in this Court if there is no subject matter jurisdiction.  This is because "no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant."  Ins. Corp. of Ir., Ltd. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 702 (1982); see also Spectacor Mgmt. Grp. v. Brown, 131 F.3d 120, 125 (3d Cir. 1997) (noting federal jurisdiction cannot be conferred by agreement of parties, as it "arises under the constitution" and "is not created by contract or waiver").

plaintiff only alleged loss and did not bring the claim within two years of the date of the act complained of); <u>Kamel v. 5Church, Inc.</u>, No. 17-507, 2019 WL 4024252, at *17 (W.D.N.C. Aug. 23, 2019) (noting that if a party "has not come forward with any evidence of 'damage' within the meaning of the CFAA[, then,] as a result, the two-year statute of limitations runs from 'the date of the act complained of' rather than 'the date of discovery of the damage'").  The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information[.]"  18 U.S.C. § 1030(e)(8).  In contrast, "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]"  18 U.S.C. § 1030(e)(11).

Even if this Court were to consider Plaintiff has alleged "damage" within the meaning of the CFAA to trigger the CFAA's discovery rule,[2] this Court finds Plaintiff's CFAA claims are

---

[2] This Court declines to rule on the issue of whether Plaintiff has pleaded damages as defined by 18 U.S.C. § 1030(e)(8).  Even if Plaintiff has successfully pleaded damages, her claim is still outside the applicable statute of limitations as to all Defendants.

barred by the statute of limitations.  Plaintiff explains her
CFAA claim is not barred by the statute of limitations because
it was not until May 2019 when "she learn[ed] of the nature and
extent of the malware installed on her computer."  Compl. ¶134.
Plaintiff's argument misses the point.  While the Third Circuit
has not specifically addressed the issue of whether the statute
of limitations may be tolled while a plaintiff conducts an
investigation into the allegedly wrongful conduct to determine
the identity of the perpetrator, the Second Circuit recently has
answered in the negative and this Court agrees with its
analysis.  In Sewell v. Bernardin, the plaintiff discovered that
her AOL password had been altered, which resulted in her
inability to log in, on August 1, 2011.  795 F.3d 337, 338-39
(2d Cir. 2015).  In February 24, 2012, the plaintiff discovered
that she was unable to log into her Facebook account.  Id. at
339.  On January 2, 2014, the plaintiff filed suit against her
ex-boyfriend, who plaintiff alleged obtained her AOL and
Facebook passwords without her permission.  Id.  The district
court granted the defendant's motion to dismiss the plaintiff's
CFAA claim as untimely because the plaintiff was "aware that the
integrity of her computer had been compromised" as of August 1,
2011, when she discovered she could not log into her AOL
account.  Sewell v. Bernardin, 50 F. Supp. 3d 204, 212 (E.D.N.Y.
2014).  The Second Circuit affirmed the district court's

decision to dismiss the CFAA claim based on the AOL account and reversed the district court's decision to dismiss the CFAA claim based on the Facebook account.  In regard to the AOL account, the court held that for statute of limitation purposes the plaintiff "discovered the 'damage' to her AOL account for CFAA purposes on August 1, 2011, when she learned that she could not long into her AOL e-mail account." Id. at 340.  The court further held that plaintiff "may not have known exactly what happened or why she could not log in is of no moment." Id.  The court then clarified that "CFAA's statute of limitation began to run when [plaintiff] learned that the integrity of her account had been impaired." Id.

      In regard to the Facebook-related CFAA claim, the court found the statute of limitations did not bar such claims because the plaintiff did not discover she was unable to log onto her Facebook account until February 24, 2012. Id. at 341.  The court partially disagreed with the district court's holding because the plaintiff "did not allegedly discover 'that the integrity of her computer had been compromised' as of August 1, 2011." Id.  The court explained that plaintiff's AOL-based CFAA claim was "premised on impairment to the integrity of a computer owned and operated by AOL, not of her own physical computer" and thus, the plaintiff had two separate CFAA claims: one based on her AOL account and a second based on her Facebook account. Id.

This Court agrees with the Second Circuit's reasoning that, for statute of limitations purposes, a CFAA claim starts to run when the plaintiff is aware of the alleged damage not when the plaintiff learns exactly what has happened.  This rule of law is entirely consistent with the language of the CFAA: "No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g).  To hold otherwise would be to rewrite the statute which this Court cannot do.

Here, the relevant inquiry is not, as Plaintiff suggests, when she learned of the nature and extent of the software installed on her computer and the Defendants' involvement. Instead, the relevant inquiry is when Plaintiff learned the integrity of her computer had been compromised.  Unlike the plaintiff in Sewell, Plaintiff's CFAA claim is entirely based on the integrity of her own computer being compromised, which stems from the installation of the keylogger.  As made clear by her Counterclaim in the state court proceedings, Plaintiff learned the integrity of her computer had been comprised at least as early as September 9, 2015.  (ECF No. 7-3 at 8-10). Specifically, in her Counterclaim, Plaintiff alleged that a "keylogger and other malicious software or spyware" has been installed onto Plaintiff's computer.  (ECF No. 7-3 at 8-9).

17

Accordingly, she should have brought her CFAA claim no later than September 9, 2017.

While she did not know about the possible involvement of Defendant Klein and Cooper Levenson or the extent of Defendant Radcliff's involvement at the time, neither of that is relevant to the inquiry of whether the statute of limitations had started to run.  This is because the main inquiry in determining when the statute of limitation starts to accrue is when Plaintiff learned the integrity of her computer had been compromised, even if the identity of the hacker was not known at the time. Sewell, 795 F.3d at 340 ("Sewell discovered the 'damage' to her AOL account for CFAA purposes on August 1, 2011, when she learned that she could not log into her AOL e-mail account. That she may not have known exactly what happened or why she could not log in is of no moment.").

In the event this Court agreed with the Defendants as to the date of accrual for statute of limitations purposes, Plaintiff has advanced several arguments suggesting that Defendants' statute of limitations arguments still fail.  First, Plaintiff argues her CFAA claim are tolled by the doctrine of equitable tolling.  "Equitable tolling is extended only sparingly, in circumstances '(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has

18

been prevented from asserting his or her rights; or (3) where
the plaintiff has timely asserted his or her rights mistakenly
in the wrong forum.'" Glover v. FDIC, 698 F.3d 139, 151 (3d
Cir. 2012) (quoting Santos ex rel. Beato v. United States, 559
F.3d 189, 197 (3d Cir. 2009)). "However, fraudulent concealment
may toll the statute only if it misleads a plaintiff into
thinking that he does not have a cause of action." Davis v.
Grusemeyer, 996 F.2d 617, 624 (3d Cir. 1993). The "plaintiff
has the burden of proving fraudulent concealment." Forbes v.
Eagleson, 228 F.3d 471, 486-87 (3d Cir. 2000).

Here, Plaintiff argues the fraudulent concealment doctrine
saves her CFAA claim because (1) Defendants "fraudulently
concealed installation of the keylogger and recovered thousands
of documents illegally from her computer;" (2) "Defendants filed
intentionally false pleadings;" and (3) Defendants "mislead the
Plaintiff to 'stay' the Tevis litigation so that they could try
later to avoid liability." (ECF Nos. 11-1 at 20; 12-1 at 19).

The first two bases do not warrant application of the
fraudulent concealment doctrine because neither actions actually
misled Plaintiff into thinking that she did not have a cause of
action. First, while Defendants did not notify Plaintiff the
keylogger was installed in 2013 and the years to follow,
Plaintiff did become aware of the existence of the keylogger as
late as September 9, 2015 and as a result filed a Counterclaim

asserting a New Jersey Wiretapping Act claim against Defendant Radcliff based on the same factual allegations that underly her current CFAA claim.  Second, while Defendants did respond to the Counterclaim by denying the existence of the keylogger, this did not actually mislead Plaintiff into thinking she did not have a cause of action as demonstrated through the Hendrickson Report. The Hendrickson Report opens by explaining that on February 25, 2017 Plaintiff met with Sergeant Vincent Ceci and explained "she believed that a suspect, possibly her ex-husband, Kristen E. Radcliff, was utilizing malicious software to access her computer . . . and subsequently use the information obtained from her computer against her." (ECF No. 1-4 at 1).  Even if this Court accepted that the filing of the Answer to Plaintiff's Counterclaim misled Plaintiff into thinking she did not have a cause of action, it is clear that by at least February 2017 Plaintiff continued her investigation to support her current CFAA cause of action.  Accordingly, Plaintiff still should have brought her CFAA claim by no later than February 2019.  Finally, Plaintiff's third basis for fraudulent concealment fails because, even if this Court were to agree the _Tevis_ action was stayed from 2016-2019, only the claims in the _Tevis_ action would be stayed.  The _Tevis_ action did not include a CFAA claim. Thus, this basis does not support application of the fraudulent concealment doctrine.

Second, Plaintiff argues Defendants are barred from a
statute of limitations defense under the equitable estoppel
doctrine.  This doctrine is "generally applied when a
defendant's actions directly impacted plaintiff's decision on
whether to file suit, such as when 'a defendant has lulled a
plaintiff into a false sense of security by representing that a
claim will be amicably settled without the necessity for
litigation.'"  <u>Prudential Ins. Co. of Am. v. United States
Gypsum Co.</u>, 828 F. Supp. 287, 303 (D.N.J. 1993).  Moreover,
"where the basis for application of the doctrine is the
defendant's misrepresentations or failures to adhere to a legal
duty to disclose, the plaintiff must have relied upon
defendants' actions in not filing suit earlier."  <u>Id.</u>  This
Court has explained that regardless "of defendant's conduct,
plaintiff is still obligated to act with diligence" and that the
"plaintiff's actual knowledge of its cause of action would
preclude application of the equitable estoppel doctrine."  <u>Id.</u>
Here, Plaintiff argues Defendants are estoped from raising a
statute of limitations argument because "Defendants Klein and
Cooper Levenson had an affirmative obligation not to: (i) not
file a false pleading with the New Jersey Superior Court; (ii)
hide from Plaintiff that their client had installed malware on
her computer and they were receiving information and documents
unbeknownst to her, pursuant to RPC 4.4; or (iii) lull the

Plaintiff into a false sense of security by agreeing, as counsel to Radcliff, that the Tevis litigation would be stayed." (ECF Nos. 11-1 at 18-19; 12-1 at 17-19).

Although equitable estoppel is a different doctrine than fraudulent concealment, Plaintiff's argument fails for similar reasons under this doctrine. First, as similarly discussed *supra*, this Court does not agree that the alleged stay of the Tevis action should warrant the application of equitable estoppel because that action does not even include a CFAA counterclaim. Second, even accepting Plaintiff's argument that Defendants Klein and Cooper failed to provide prompt notice of the installed keylogger it is evident that as late as September 2015 Plaintiff discovered the keylogger and was aware that Defendant Radcliff was using the keylogger "to gain advantage in litigation." (ECF 7-3 at 8-9). As this Court has noted, Plaintiff is still required to act with diligence regardless of Defendants actions and Plaintiff's actual knowledge of her CFAA cause of action precludes application of the equitable estoppel doctrine. Prudential Ins. Co. of Am., 828 F. Supp. at 303.

Moreover, the filing of a false pleading does not save Plaintiff as it is clear she continued to investigate the very thing she argues Defendants denied as late as February 2017: the installation of a keylogger on her computer. (ECF No. 1-4). From these facts, it does not appear she relied on the actions

of the Defendants in failing to file her CFAA claim earlier and was actually aware of its CFAA action based on the installation of the keylogger no later than February 2017.  It seems obvious that if Plaintiff had brought a timely CFAA claim against Defendant Radcliffe it would have led to information about the possible involvement of others through ordinary discovery.

Third, Plaintiff argues the continuing tort violation doctrine bars Defendant Radcliff's statute of limitations defense.  The continuing violations theory states, "a plaintiff may pursue a claim for conduct that standing alone would have been untimely as it occurred before the start of the applicable statute of limitations filing period as measured back from the time of the filing of the action." Muhammad v. NJ Dep't of Corr., 396 F. App'x 789 (3d Cir. 2010) (citing McAleese v. Brennan, 483 F.3d 206, 218 (3d Cir.2007)).  The application of the continuing violations theory may be appropriate in cases in which a plaintiff can demonstrate that the defendant's allegedly wrongful conduct was part of a practice or pattern of conduct in which he engaged both without and within the limitations period. McAleese v. Brennan, 483 F.3d 206, 218 (3d Cir. 2007).  "'To establish that a claim falls within the continuing violations theory, a plaintiff must do two things': (1) 'he must demonstrate that at least one act occurred within the filing period[,]' and (2) he must establish that the conduct is 'more

than the occurrence of isolated or sporadic acts,' i.e., the conduct must be 'a persistent, on-going pattern.'"   <u>Id.</u> Plaintiff fails to establish that at least one act supporting her CFAA claim occurred within the filing period of her CFAA claim.  Accordingly, this Court finds that Plaintiff's claims are barred by the statute of limitations.

**F. The Court Declines to Exercise Supplemental Jurisdiction over Remaining State law Claims**

The claims brought against Defendants are: (1) Computer Fraud and Abuse Act; (2) the New Jersey Wiretap Act; (3) Interference with Contractual Relations; (4) Interference with Prospective Economic Advantage; (5) Intentional Infliction of Emotional Distress; (6) Invasion of Privacy; (7) Abuse of Process; and (8) Misappropriation of Confidential and Privileged Information.  Plaintiff brings the following additional claims against Defendant Radcliff: (1) Alienation of Affection; (2) Defamation; and (3) Assault & Battery.  Finally, Plaintiff also asserts a negligent supervision claim against Defendant Cooper Levenson.  (<u>See</u> Compl. at 20-41).

As discussed *supra* in Section E, Plaintiff's CFAA claim against all Defendants, the only claim which this Court may have had original jurisdiction, is barred by the statute of limitations.  The remaining causes of action are all brought under New Jersey state law.  "[W]hen all federal claims against a

24

party have been eliminated from a case, the district court may, in its discretion, decline to extend supplemental jurisdiction over the remaining state law claims." Rothman v. City of Northfield, 716 F. Supp. 2d 369, 373 (D.N.J. 2010) (citing Lentz v. Mason, 961 F. Supp 709, 717 (D.N.J. 1997)).  Where the federal claims are dismissed at an early stage in litigation, courts generally decline to exercise supplemental jurisdiction over state law claims.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); Growth Horizons, Inc. v. Delaware Cty., Pa., 983 F.2d 1277, 1284-1285 (3d Cir. 1993).

In this case, as the Court is dismissing the only claim over which it may have had original subject matter jurisdiction at an early stage in the litigation, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons stated above, the Court will grant Defendants' motions to dismiss with respect to the CFAA claim. The Court will decline to exercise supplemental jurisdiction over the remaining state law claims.

An appropriate Order will be entered.


Date: December 4, 2020              s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.


25